UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
VALERIE HODGSON,                                :
              Plaintiff,                          :
                                                        :            12 CV 1634 (HB)
   - against -                                       :
                                                        :            **OPINION & ORDER**
CITY OF NEW YORK and NEW YORK CITY :
POLICE DEPARTMENT,                               :
             Defendants.                       :
------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      On this motion, Defendants City of New York and the New York City Police Department ("NYPD") argue that they are entitled to summary judgment in this employment discrimination action. Plaintiff Valerie Hodgson's five claims allege violations of Title VII, the federal Equal Pay Act ("EPA"), New York State's Human Rights Law ("NYSHRL"), the New York State Equal Pay Act ("state EPA"), and the New York City Human Rights Law ("NYCHRL") for unequal pay in relation to men performing equal work. For the reasons stated below, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## BACKGROUND

      Since 1983 and until her retirement, Plaintiff was employed in the NYPD's Photographic Services Unit (the "Photo Unit"). The Photo Unit is responsible for an array of photography services, including producing mug shots of arrestees, missing persons circulars, and public relations materials, and photographing ceremonies, executive staff, and large and small events within the NYPD. When called upon, the Photo Unit also photographs police officers responding to emergencies and provides photos for training or other informational purposes. Upon receiving a request for photography services, the Photo Unit organizes the photo shoot, sends photographers on assignment, and develops and prints the images obtained.

      In this case, Plaintiff argues that she was paid less than similarly-situated male employees. She offers the Directors of the Printing Unit and Video Unit as comparators. The Printing Unit is responsible for producing all manner of printed materials, including books, manuals, signs, forms, wanted circulars, business cards, stationery, permits, and legal documents. By comparison, the Video Unit provides video services to the NYPD, producing motivational videos as well as other videos at the Police Commissioner's request. The Video Unit also

videotapes breaking news events, ceremonies, and other events.  But 85 percent of the Video Unit's time is spent producing training videos.  To produce a training video, members of the Video Unit meet with departmental liaisons to discuss the video's overall message, map out a blueprint, write a script, work with actors, and develop other resources for the video.

The directors of each respective Unit are responsible for budgeting, quality control, and general management and supervision of the employees in their Units.  But despite her long history with the NYPD, Plaintiff was paid significantly less than her counterparts in the Printing and Video Unit.  When Plaintiff was promoted within the Photo Unit to Director in February 2009, she was offered a salary of $60,000 per year.  Plaintiff eventually retired as Director of the Photo Unit in March 2011 at an annual salary of $72,685.

On the other hand, Plaintiff's first comparator, Michael Netrosio, began his career with the Printing Unit in January 2006.  Upon receiving a promotion to Designated Deputy Director in January 2007, Netrosio's salary was increased to $91,690.  Netrosio was promoted to Designated Director in August 2009.  In that role, Netrosio today receives a salary of $117,667 per year.  And Plaintiff's second comparator, Anthony Lopresti, is the Designated Director of the NYPD's Video Unit.  At the time of his hire as director in 1995, Lopresti's salary was $64,900 per year.  But by March 2006, Lopresti was earning $100,371.

As a reason for these pay discrepancies, Defendants cite the NYPD's salary policies in which management employees' salaries are determined based on a percentage-increase from each employee's previous salary.  But in setting salaries, there is some discretion to consider other factors.  For example, Commissioner Arnold Wechsler, the individual in charge of setting Plaintiff's salary, testified at deposition that he was permitted to consider "any other compelling reason which we feel would be appropriate to consider."  (Wechsler Dep. 19:18–20:10.)

## DISCUSSION

Summary judgment is appropriate "only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).  The Court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[ ] all reasonable inferences in that party's favor."  *Id.*  Nevertheless, "summary judgment may be appropriate even in the fact-intensive context of discrimination cases."  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

A.  **Plaintiff's Federal EPA Claims**

Plaintiff's EPA claim is reflective of the reality facing women today.  Nearly fifty years have passed since the EPA was signed into law, but nationwide women still face a pay gap.  Indeed, "[a]lmost half a century after it became illegal to pay women less than men for the same job, the weekly wage of a typical woman who works full time is almost 18 percent less than that of the typical working man."  Eduardo Porter, *Motherhood Still a Cause of Pay Inequalty*, N.Y. Times, June 13, 2012, at B1.  Still worse is that progress in closing the gap has slowed to a halt.  "Indeed, the pay gap between men and women who have similar qualifications and work in the same occupation—which economists say is one of the purest measures of gender equality—has barely budged since 1990."  David Leonhardt, *Gender Pay Gap, Once Narrowing, Is Stuck in Place*, N.Y. Times, Dec. 24, 2006.

Though slightly better than the national average, in 2010 women in New York still earned 17.2 percent less than men.  Ariane Hegewisch et al., *The Gender Wage Gap in New York State and Its Solutions* 1 (2011).  Similarly, in New York City alone, women working in local government earn 17.5 percent less than male municipal employees.  John C. Liu, *Gender Equity in the New York City Municipal Workforce:  A Snapshot Analysis* 6 (2011).  And women who work for the Defendant NYPD fare worst of all:  Female NYPD employees earn 27 percent less than their male counterparts.  *Id.* at 9.  Plaintiff's EPA claim is thus indicative of the progress still to be made in pursuit of gender equity in the workplace.

1. **Legal Standard**

To present her claim under the EPA, Plaintiff must first establish a prima facie case of discrimination by showing "i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions."  *Moccio v. Cornell Univ.*, No. 09 Civ. 3601, 2012 WL 3648450, at *25 (S.D.N.Y. Aug. 27, 2012) (quoting *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001)).  If Plaintiff can establish a prima facie case, "the burden of persuasion shifts to [Defendants] to establish that the salary disparity can be explained by at least one of four affirmative defenses described in the Act."  *Hernandez v. Kellwood Co.*, No. 99 Civ. 10015, 2003 WL 22309326, at *8 (S.D.N.Y. Oct. 8, 2003) (citing *Belfi v. Prendergast*, 191 F.3d 129, 136 (2d Cir. 1999)).  Thus while Title VII claimants "shoulder[ ] the ultimate burden of proving that the employer's articulated reason was

3

pretextual," EPA claimants do not.  *Belfi*, 191 F.3d at 135; *see Borrero v. Am. Express Bank Ltd.*, 533 F. Supp. 2d 429, 439 (S.D.N.Y. 2008) (comparing Title VII and EPA burden-shifting).

## 2.  Equal Work

The parties' dispute at summary judgment first looks to whether Plaintiff performed work requiring "equal skill, effort, and responsibility." *Lavin-McEleney*, 239 F.3d at 480 (quoting *Belfi*, 191 F.3d at 135).  To satisfy this prong, "[a] plaintiff need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are 'substantially equal' in skill, effort, and responsibility."  *Id.* (alterations in original) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995)).

Construing the ambiguities in the record in Plaintiff's favor, the record demonstrates that a jury may find Plaintiff's position as director was "substantially equal" to the positions of her comparators.  While the parties focus the Court's attention on the various roles of the three media-services Units, Defendants fail to demonstrate how the responsibilities of the <u>directors</u> of those Units are different enough such that their positions are unequal as a matter of law.  The three Units may well perform somewhat different tasks within the NYPD.  But all three directors managed the employees within their Units, handled budgetary concerns, and were responsible for the overall direction and operation of their respective Units.  Thus the directors of those Units, in their supervisory capacity, likely perform "substantially equal" jobs.

## 3.  Defendants' Affirmative Defense

Moving right along, Defendants argue in the alternative that any wage disparity was "based on any other factor other than sex."  *Belfi*, 191 F.3d at 136 (citing 29 U.S.C. § 206(d)(1)).  To invoke this affirmative defense, Defendants must not only identify this nongender factor but also demonstrate that they had a "legitimate business reason" for implementing that factor.  *Id.*

Defendants meticulously outline the manner in which the NYPD's salary policies resulted in the pay disparities between Plaintiff and her comparators.  The crux of Defendants' argument is that the NYPD determines its salaries for management employees based upon a percentage-increase of that employee's previous salary. Yet Defendants fail to point the Court to any business reason for this policy, much less a legitimate one.  For this reason alone, Defendants' motion for summary judgment must fail.  It is insufficient to rely upon the EPA's exception for a "factor other than sex" by citing a facially gender-neutral policy without also explaining the business reason for that policy.  *Virgona*, 2008 WL 4356219, at *10 (quoting

4

*Belfi*, 191 F.3d at 136); *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 525 (2d Cir. 1992). The record presented to me is bereft of such reason, and thus Defendants have failed to meet their burden to prove that this affirmative defense avoids EPA liability.

### 4. EPA Statute of Limitations

But even if a jury could find liability, Defendants further argue that the EPA's two-year statute of limitations governing nonwillful violations applies. *See* 29 U.S.C. § 255(a). Under the EPA, receipt of an unequal paycheck is not a continuing violation even if it is part of a discriminatory wage policy. *Downes v. JP Morgan Chase & Co.*, No. 03 Civ. 8991, 2004 WL 1277991, at *7 (S.D.N.Y. 2004) (citing *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 118–119 (2d Cir. 1997)). Plaintiff therefore may recover only for violations occurring within the applicable limitations period. *Id.* But if Plaintiff can show a willful violation, her EPA claims accruing since March 6, 2009—three years before the commencement of this action—are timely. 29 U.S.C. § 255(a).

Under § 255(a), an employer acts willfully where he acts "without making any reasonable effort to determine whether the decision to [take the action complained of] violates the law." *Virgona*, 2008 WL 4356219, at *7 (alterations in original) (quoting *Benjamin v. United Merchants & Mfrs., Inc.*, 873 F.2d 41, 44 (2d Cir.1989)). For example, willful conduct exists if the employer "had access to payroll records demonstrating 'pay disparities between male and female employees in seemingly similar positions.'" *Id.* (quoting *Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 861 (D. Md. 2000)). Under such circumstances, granting summary judgment for a defendant is inappropriate even if that defendant was not "directly informed of inequity in pay by the plaintiff." *Id.* Here, given the well-documented and long-standing wage gap between men and women in city employment and in the NYPD, it is inconceivable that Defendants did not have access to records demonstrating that gap. Failure to act in such a case is alone sufficient to demonstrate willfulness.

But in further support of willfulness, Plaintiff also presents evidence that she complained of her unequal pay, yet Defendants still chose to do nothing. Indeed, Plaintiff points to an email from Assistant Deputy Commissioner Deborah Zoland, forwarding to Plaintiff an internet link to the Lilly Ledbetter Fair Pay Act. Zoland sent this email on January 28, 2009, shortly after Plaintiff complained to her about the salary Plaintiff was offered for the Director position in comparison to the salaries of her male predecessors. (Hodgson Aff. ¶ 35; Belovin Dec. Ex. S.)

And on June 25, 2009, Daniel Murphy, one of Plaintiff's supervisors, sent a letter to Commissioner Wechsler soon after Plaintiff's promotion observing that unless Plaintiff's pay was increased, "[t]his inequality in compensation may leave the agency vulnerable to a claim of employment discrimination." (Murphy Aff. ¶ 10; Belovin Dec. Ex. I.)

Neither Murphy's letter nor Plaintiff's complaints to Zoland resulted in any action to increase Plaintiff's salary. (Murphy Aff. ¶ 11.) Here the record again demonstrates that Defendants were aware of the disparity between Plaintiff's pay and that of similarly situated men, yet did not act. While willfulness seems clear on these facts, I leave it to the jury to make the final determination. *See Pollis*, 132 F.3d at 120 (defendant's knowledge that plaintiff "was paid less than comparable males, but did not rectify the situation" supported willful EPA violation).

### B.  Title VII and NYSHRL Claims

I next turn to Plaintiff's intentional discrimination claims. Given the similarities between Title VII and the NYSHRL, both of those claims may be analyzed together. *Kaur v. N.Y. City Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 339 (S.D.N.Y. 2010) (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000)). Specifically, to establish a claim for unequal pay for equal work under both Title VII and the NYSHRL, courts apply the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *Belfi*, 191 F.3d at 139. Under that framework, if Plaintiff can show a prima facie violation, the burden of production shifts to Defendants to put forth "an explanation to rebut the prima facie case." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993). But to prove the existence of discriminatory intent, Plaintiff must then show that the nongender explanation Defendants offer is not the only reason for the inequity, and that one of the motivating factors was unlawful discrimination. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 78 (2d Cir. 2001).

Assuming that Plaintiff can make out a prima facie case, Defendants' proffer of the NYPD's salary policies as a nongender explanation is sufficient to meet their burden of production. But the record is barren of any showing that unlawful discrimination motivated the pay discrepancies she faced. Thus, Plaintiff's case for intentional discrimination must fail.

At best, Defendants ignored Plaintiff's complaints regarding her low pay. But nothing in the record indicates that "[P]laintiff's protected status contributed to [her] employer's decision." *Finn v. N.Y. State Office of Mental Health- Rockland Psychiatric Ctr.*, No. 08 Civ. 5142, 2011

WL 4639827, at *9 (S.D.N.Y. Oct. 6, 2011) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 78 (2d Cir. 2001)).  Without more, Defendants' alleged failure to increase Plaintiff's pay in response to her complaints of discrimination is insufficient to show that the pay decision itself was actually motivated by discrimination.

Having no direct evidence of discrimination, Plaintiff also points to the fact that the NYPD's salary policies are not mandatory and have a discriminatory effect on female managers.  She also observes that the lower-paying Photo Unit employs more women than the higher-paying Video and Printing Units.  But Plaintiff still presents no evidence as to any motive leading to the lesser pay for these other female employees in the NYPD.  Aggregating this salary data and imputing discriminatory intent to Defendants on that basis would be merely speculative.  Accordingly, Plaintiff's Title VII and NYSHRL claims must be dismissed.

## C.  NYCHRL Claims

Turning next to Plaintiff's NYCHRL claims, pursuant to the Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005), "claims under the City HRL must be reviewed independently from and 'more liberally' than their federal and state counterparts." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (citing *Williams v. N.Y. City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (App. Div. 2009)).  To establish an NYCHRL violation, Plaintiff must show "'by a preponderance of the evidence that she has been treated less well than other employees' due to unlawful discrimination."  *Kaur*, 688 F. Supp. 2d at 339 (quoting *Williams*, 872 N.Y.S.2d at 39).  But "[n]one of the 2005 Restoration Act's amendments to the NYCHRL altered the standard by which a court should determine whether a discriminatory act occurred."  *Id.* at 340 (quoting *Wilson v. N.Y.P. Holdings, Inc.*, No. 05 Civ. 10355, 2009 WL 873206, at *29 (S.D.N.Y. Mar. 31, 2009)).

Even after the passage of the 2005 Restoration Act, however, liability under the NYCHRL still requires a showing of discriminatory intent.  *See Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) ("[D]iscrimination claims under . . . the NYCHRL are subject to the burden-shifting analysis applied to discrimination claims under Title VII"); *Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 124 (App. Div. 2011) (requiring proof of discriminatory motive).  As explained above, evidence of the effect of the NYPD's salary policies on female employees, the concentration of women in the Photo Unit, and Defendants' disregard for

7

Plaintiff's salary complaints is insufficient to establish intent to discriminate. Without evidence of discriminatory animus, Plaintiff cannot sustain an NYCHRL claim.

### D. State EPA Claim

Finally, Defendants argue that Plaintiff's state EPA claim must fail because while the state EPA regulates employer conduct, covered employers "shall not include a governmental agency." N.Y. Labor Law § 190(3); *see Estate of Hamilton v. City of New York*, 627 F.3d 50, 57 (2d Cir. 2010) ("[Section] 190(3) . . . carv[es] out governmental agencies from the reach of the [state EPA]."). Both the City of New York and the NYPD are governmental agencies for the purposes of this statute. As such, Plaintiff's state EPA claims must be dismissed.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED as to Plaintiff's Title VII, NYSHRL, NYCHRL, and state EPA claims. Defendants' motion is DENIED as to Plaintiff's federal EPA claims. The Clerk of the Court is instructed to close this motion.

**SO ORDERED**
March 7, 2013
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.